## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

OTERO,
     **Plaintiff,**                  :
                              :
**v.**                          :       **3:19-cv-01688 (VLB)**
                              :
**PURDY, et al.,**
     **Defendants.**             :

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, [ECF NO. 47]

On October 28, 2019, the plaintiff, Jonathan Otero, an inmate who was formerly confined within the custody of the Department of Correction ("DOC"), brought this action *pro se* and *in forma pauperis* under 42 U.S.C § 1983 against Northern Correctional Institution ("Northern") Correction Officers Purdy, Nasiatka, Tittus, and Amoral; Registered Nurse ("RN") Butler and RN Jasenec; Correctional Lieutenant Hollister; Lieutenant Betances; and District Administrator Mulligan. [Compl. (ECF No. 1)].

On Initial Review, the Court, Judge Janet C. Hall presiding, permitted Plaintiff's case to proceed on his Eighth Amendment claims based on excessive force against Correctional Lieutenant Hollister and Correction Officers Purdy, Nasiatka, Tittus, and Amoral in their individual capacities; his Eighth Amendment claims based on deliberate indifference to his medical needs against RNs Jasenec and Butler; his Fourteenth Amendment claims against Lieutenant Betances and District Administrator Mulligan; his state law assault and battery claims against Correction Officers Purdy, Nasiatka, Tittus, and Amoral; and his state law negligence claims against Correctional Lieutenant Hollister, Correction Officers Purdy, Nasiatka, Tittus, and Amoral, and RNs Jasenec and Butler in their individual

capacities.   [Initial Review Order ("IRO") at 14-15 (ECF No. 15)].   Otero's official capacity claims for injunctive relief against the defendants were dismissed as moot.   *Id.*   On September 2, 2020, the case was reassigned to the Honorable Dominic J. Squatrito.   [ECF No. 37].

Defendants filed, on December 30, 2020, a motion for summary judgment on the Complaint in its entirety on grounds of failure to exhaust under the Prisoner Litigation Reform Act ("PLRA"), the merits of Plaintiff's claims, and qualified immunity.   [Mot. for Summary Judgment (ECF No. 47)].   In support of their motion, Defendants have submitted a memorandum of law [Defs.' Mem. (ECF No. 47-1)] and a Rule 56(a)1 Statement of Facts [Defs.' Stmt. (ECF No. 47-2)] with exhibits.   On January 13, 2021, Plaintiff filed an opposition response with exhibits to the motion for summary judgment.   [Pl.'s Response in Opp. (ECF No. 50) and Response in Opp. Exhibits A-D (ECF No. 50-1)].   Plaintiff has also filed a response to Defendants' Reply Brief.   [Pl.'s Response (ECF No. 55) to Defendants' Reply Brief (ECF No. 54)].   On January 22, 2021, the case was transferred to the undersigned.   [ECF No. 51].

For the following reasons, the motion for summary judgment will be granted in part and denied in part.

## I. FACTS[1]

The following factual background is drawn from the verified complaint and the Defendants' Rule 56(a)1 statement of facts with supporting exhibits.

### A. Plaintiff's Factual Allegations

Plaintiff was previously housed in the Security Risk Group ("SRG") program at Northern Correctional Institution from April 3, 2019 to December 9, 2019. [Compl. ¶¶ 11-12 (ECF No. 1)]; Defs.' Stmt. ¶ 5.

Plaintiff alleges that on June 30, 2019, he made a telephone call in the day room while he was secured in restraints.   Compl. ¶¶ 13, 15.   At Northern, SRG inmates are placed in full restraints when exiting their cell for a social phone call. *Id.* ¶ 14.   Correction Officer Purdy allegedly entered the day room and ordered Plaintiff to hang up his phone call.   *Id.* ¶ 16.   Correction Officer Purdy allegedly pressed down the phone receiver to terminate the phone call and then grabbed Plaintiff, pushed him against the wall, and slammed his head against the floor.   *Id.*

---

[1] Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact."   Local Rule 56(a)3 provides that "each denial in an opponent's Local 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." Defendants informed Plaintiff of this requirement in a *Notice to Pro Se Litigant*. [Notice (ECF No. 47-3)].   The Court may also consider the allegations of the verified complaint in reviewing the motion for summary judgment.   *See Jordan v. LaFrance*, No. 3:18-cv-01541 (MPS), 2019 WL 5064692, at *1 n.1 (D. Conn. Oct. 9, 2019) (a "verified complaint ... may be considered as an affidavit" for summary judgment purposes"); *Walcott v. Connaughton*, No. 3:17-cv-01150 (JCH), 2018 WL 6624195, at *1 n.1 (D. Conn. Dec. 18, 2018).

¶¶ 17-18.   Correction Officer Purdy allegedly punched Plaintiff repeatedly in the face, head, and body.   *Id.* ¶ 19.   Correction Officers Nasiatka, Tittus, and Amoral allegedly joined Purdy in punching Plaintiff.   *Id.* ¶ 20.   Plaintiff's breathing allegedly became difficult, but Purdy, Nasiatka, Tittus, and Amoral continued to disregard his health and safety.   *Id.* ¶ 21.   After Defendant Hollister responded to the scene, he allegedly deployed a chemical agent into Plaintiff's face, causing Plaintiff to have more difficulty breathing and to lose consciousness.   *Id.* ¶¶ 22-24. Hollister allegedly placed a bag over Plaintiff's head, placed Plaintiff in full restraints in his cell, and approved of Plaintiff's tight restraints.   *Id.* ¶¶ 25-27.

RN Jasenec allegedly did not adequately examine Plaintiff or treat him for his asthma, his injury, or the contamination to his eyes.   *Id.* ¶ 28.   RN Butler allegedly checked Plaintiff's restraints and approved of the extremely tight restraints despite his medical professional knowledge of the damage that would be caused.   *Id.* ¶ 29.   Plaintiff alleges that he suffered mentally and sustained physical nerve damage.   *Id.* ¶ 37.

On July 10, 2019, Lieutenant Betances allegedly found Plaintiff guilty of assault and gave him the maximum sanction.   *Id.* ¶ 31.   Plaintiff alleges that he was not provided with a Disciplinary Report for the assault as required by the relevant DOC Administrative Directive.   *Id.* ¶ 31.   District Administrator Mulligan was allegedly aware that Lieutenant Betances found Plaintiff guilty of assault and that Plaintiff had not been provided with a disciplinary report of the charged misconduct.   *Id.* ¶ 32.

4

**B. Facts Relevant to Exhaustion of Administrative Remedies[2]**

At Northern, inmates file their Level-1 grievances and grievance appeals in a designated "Administrative Remedies" box that is clearly marked and accessible to the inmates at each facility.   Defs.' Stmt. ¶ 14.   At Northern, the grievances and grievance appeals are collected by staff on a daily basis, Monday through Friday, and are logged into a Grievance Log (Form CN 9608) upon receipt.   Id. ¶ 15. Jaclyn Saunders is the Administrative Remedies Coordinator ("ARC") at Northern, and in that position, is the keeper of records of grievances and grievance appeals filed by inmates at Northern pursuant to Administrative Directive 9.6, including the Northern Grievance Log (Form CN 9608).   Id. ¶ 16.

Saunders avers that Plaintiff filed two Level-1 grievances, both of which were denied, while he was at Northern.   Id. ¶ 17 (citing Ex. A ¶¶ 7, 9-10 [ECF No. 47-4]; Ex. C [ECF No. 47-6]; Ex. D, 1-4 [ECF No. 47-7]).   Plaintiff also filed Level-2 Grievance Appeals of the denials of his Level-1 Grievances.   Id. ¶ 18 (citing Ex. A ¶¶ 7, 9-11; Ex. D, 5-6).

Relevant to the instant case, Plaintiff filed Level-1 Grievance, #141-20-010, which was received on July 12, 2019.   Defs.' Stmt. ¶ 19.   This Level-1 Grievance complained about the incident on June 30, 2019 and asserted that Purdy hung up the telephone during his phone conversation and then punched and body slammed him, and that another correctional staff member maced him, although Plaintiff

---

[2] **Defendants' Rule 56(a)1 Statement provides only facts relevant to Plaintiff's exhaustion of his administrative remedies.**

should not be maced due to his severe asthma.   [Ex. D at 1-2 (ECF No. 47-7)].   The Grievance states further that a safety veil was put over his head, that he had a hard time breathing, that he was not properly decontaminated, and that he was deprived of medical treatment and tortured by being placed in full restraints for twenty-four hours.   *Id.*   This Grievance was denied on August 20, 2019 for the stated reason that a "careful review of said incident" indicated that he had been given a direct order by staff, that staff responded appropriately, and that he had been properly decontaminated by medical staff.   *Id.*

Plaintiff filed a Level-2 Grievance Appeal of this grievance on August 21, 2019.   Defs.' Stmt. ¶ 20 (citing Ex. A ¶ 11; Ex. D at 5-6).   This Level-2 Grievance complained about the June 30, 2019 incident where he was "choked, punch[ed], [and] kicked" by Purdy; maced by Hollister, although Hollister knew about Plaintiff's asthma; and placed in full restraints.   [Ex. D at 6].   His Level-2 Grievance was denied for the stated reason that "review of the incident in question was conducted and deemed that staff actions were within the scope of their duties[.]"   *Id.*   The Level-2 Grievance denial indicated that Plaintiff had exhausted his administrative remedies.   *Id.*

The Northern Grievance Log (Form 9608) from June 1, 2019 through December 31, 2019 does not show that Plaintiff filed any additional grievances or grievance appeals.   Defs.' Stmt. ¶ 21 (citing Ex. E, Northern Grievance Log [ECF No. 47-8]).

6

Victoria Kilham is the Health Services Review Coordinator at Northern. Defs.' Stmt. ¶ 31 (citing Ex. F ¶ 4 [ECF No. 47-9]).   A log of Health Services Review requests and appeals is maintained by the Health Services Review Coordinator. *Id.* ¶ 32 (citing Ex. F ¶ 14; Ex. G ¶ 13 [ECF No. 47-10]).   The DOC Medical Grievance Electronic Log contains no entry for a Health Services Review filed by Plaintiff during the period of June 2019 through December 2019.   *Id.* ¶ 33 (citing Ex. F ¶ 18, Ex. H [ECF No. 47-11]).

## II. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The moving party bears the burden of proving that no genuine factual disputes exist.   *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).   "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).   This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).   Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."   *Am. Home*

*Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

Under Federal Rule of Civil Procedure 56(c), the Court may consider "depositions, documents, electronically stored information, affidavits or declarations, stipulations, … admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1). Although the Court is permitted to rely solely on the cited materials, the Court may also consider other materials in the record. *See* Rule 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). "When deciding a summary judgment motion, a ... court's function is not to weigh the evidence, make credibility determinations or resolve issues of fact, but rather to determine whether, drawing all reasonable inferences from the evidence presented in favor of the non-moving party, a fair-minded jury could find in the non-moving party's favor." *Urbont v. Sony Music Entm't*, 831 F.3d 80, 88 (2d Cir. 2016) (alteration in original) (quoting *Beatie v. City of New York*, 123 F.3d 707, 710–11 (2d Cir. 1997)). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849 (1991).

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Where there is no evidence upon

8

which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

Defendants maintain that Plaintiff's opposition response cannot defeat their motion for summary judgment because he has failed to submit a compliant Local Rule 56(a)2 statement that is supported with competent evidence and is responsive to the Defendants' material facts set forth in their Rule 56(a)1 statement.   Defs.' Response at 1-3 (ECF No. 54)].   Plaintiff's opposition response includes six paragraphs of facts with attached exhibits, but he has not filed a Local Rule 56(a)(2) statement that responds to the Defendants' statement of facts as required under Local Rules 56(a)2 and (3), which require that "each denial in an opponent's Local Rule 56(a)2 Statement" be "followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."   Local Rule 56(a)2 and 3; *see* Pl.'s Response (ECF No 50). Self-represented litigants are not absolved of the obligation to file a Rule 56(a)(2) statement.   *Wu v. Nat'l Geospatial Intel. Agency*, No. 3:14-cv-01603 (DJS), 2017 WL 923906, at *2 (D. Conn. Mar. 8, 2017) (noting in context of *pro se* Plaintiff's failure to submit a Local Rule 56(a)2 statement, that "*pro se* parties are not excused from abiding by the Federal Rules of Civil Procedure.") (citation omitted).   In such cases

**9**

the court may consider the Plaintiff's verified complaint, which he signed under the penalty of perjury, as an affidavit in reviewing the motion for summary judgment.

Defendants' facts may be deemed admitted for purposes of this motion where supported by the evidence. *See Small v. Clements*, No. 3:18-cv-01731 (KAD), 2019 WL 5727388, at *1, n.1 (D. Conn. Nov. 5, 2019); *See* D. Conn. L. Civ. R. 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact.").

### III.   DISCUSSION

Plaintiff alleges violation of (1) the Eighth Amendment due to excessive force and deliberate indifference to his medical needs and (2) his Fourteenth Amendment due process rights.   Defendants first argue that Plaintiff has failed to exhaust his administrative remedies in compliance with the PLRA on his claims.

### A.  Exhaustion under the PLRA

The PLRA requires prisoners to exhaust available administrative remedies before filing a federal lawsuit regarding prison conditions.   42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").   Section 1997e(a) applies to all claims regarding prison life, *Porter*

*v. Nussle*, 534 U.S. 516, 532 (2002), and it requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90–93 (2006). A prisoner who does not complete the exhaustion process until after filing a federal lawsuit has not satisfied the exhaustion requirement. See *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001) ("Subsequent exhaustion after suit is filed therefore is insufficient."), *overruled on other gnds., Porter*, 534 U.S. 516; *Gulley v. Bujnicki*, No. 3:19-cv-00903 (SRU), 2019 WL 2603536, at *3 (D. Conn. June 25, 2019) (same).

The exhaustion requirement may be excused when a remedy is not available in practice even if it is "officially on the books." *Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016). This means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738). The United States Supreme Court has established three kinds of circumstances in which an administrative remedy might be unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

11

*Id.* at 1859–60.   "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements."   *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

Failure to exhaust administrative remedies is an affirmative defense.   *See Jones v. Bock*, 549 U.S. 199, 216 (2007).   Thus, the defendant bears the burden to prove that an inmate did not exhaust his or her remedies prior to filing the action in court.   *See Johnson v. Mata*, 460 F. App'x 11, 15 (2d Cir. 2012) ("The defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment.").   Although the defendant bears the burden on this affirmative defense at all times, the plaintiff may still have to adduce evidence in order to defeat a motion for summary judgment.   *See Hudson v. Kirkey*, No. 9:20-cv-0581-LEK-DJS, 2021 WL 1966721, at *3 (N.D.N.Y. May 17, 2021) (explaining that once defendant introduces evidence of a functional grievance system, plaintiff could not survive summary judgment without submitting competent evidence to indicate unavailability).   While it is Defendants' burden to establish that Plaintiff failed to meet the exhaustion requirement, Plaintiff bears the burden of demonstrating that such a process was unavailable.   *Brooks v. Mullen*, No. 14-CV-6690-FPG, 2020 WL 6158614, at *5 (W.D.N.Y. Oct. 21, 2020) (citations omitted).

1.  Administrative Directive 9.6[3]

Administrative Directive 9.6 "provide[s] a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority[.]"    A.D. 9.6(1).    A plaintiff with claims concerning custody staff's deliberate indifference to his health and safety in his conditions of confinement or use of excessive force is generally obligated to exhaust his administrative remedies under Administrative Directive 9.6.    *See Wilson v. McKenna*, 661 F. App'x 750, 753 (2d Cir. 2016) (affirming district court's dismissal based on inmate's failure to exhaust his claim against correction officer for deliberate indifference to medical needs under Administrative Directive 9.6); *Riles v. Buchanan*, 656 F. App'x 577, 581 (2d Cir. 2016) (affirming district court's dismissal based on inmate's failure to exhaust his claim of correction officer's use of excessive force under Administrative Directive 9.6).    "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Bock*, 549 U.S. at 218.

Administrative Directive 9.6(6) requires an aggrieved inmate to first seek informal resolution prior to filing a grievance.    A.D. 9.6(6)(A).    It provides that "the inmate shall submit a written request via CN 9601, Inmate Request Form" in the event that "the verbal option does not resolve the issue."    *Id.*

The Level-1 Grievance must be filed within thirty calendar days from the date

---

[3] Defendants have submitted the relevant version of Administrative Directive 9.6 as Exhibit B.

of the occurrence or discovery of the cause of the Grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached.   *See* A.D. 9.6(6)(C).   The Unit Administrator shall respond in writing to the Level-1 Grievance within thirty business days of his or her receipt of the Grievance.   *See* A.D. 9.6(6)(I).   The inmate may appeal the disposition of the Level-1 Grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level-2.   *See* A.D. 9.6(6)(G), (I) & (K).   A grievance returned without disposition due to a failure to comply with procedural requirements of Administrative Directive 9.6 may not be appealed.   *See* A.D. 9.6(6)(G).

A Level-2 Grievance of a disposition of a Level-1 Grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level-1 Grievance, and the Level-2 reviewer shall provide a written response within thirty business days of receipt of the Level-2 Grievance.   *See* A.D. 9.6(6)(K).   A Level-2 Grievance of the Unit Administrator's failure to dispose of the Level-1 Grievance in a timely manner must be filed within 65 days from the date the Level-1 Grievance was filed by the inmate.   *See* A.D. 9.6(6)(M).   Level-2 Grievances from inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator.   *See* A.D. 9.6(6)(K).

Level-3 Grievances are restricted to challenges to department policy, the integrity of the grievance procedure or Level-2 Grievances to which there has been an untimely response by the District Administrator.   *See* A.D. 9.6(6)(L).   A Level-

3 Grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level-2 Grievance. *See id.* A Level-3 Grievance of the District Administrator's failure to dispose of the Level-2 Grievance in a timely manner must be filed within 35 days of the filing of the Level-2 Grievance. *See* A.D. 9.6(6)(M). A Level-3 Grievance is reviewed by the Commissioner of Correction or his or her designee. *See* A.D. 9.6(6)(L).

a.    **Eighth Amendment Excessive Force**

Plaintiff alleges that Purdy, Nasiatka, Tittus, and Amoral physically assaulted him without cause while he was secured in full restraints, although he admits he defied a direct order to end his telephone call. Compl. ¶¶ 15-21, 33. He also alleges that Hollister sprayed him with a chemical agent when Plaintiff posed no threat, placed a bag over his head, and approved of Plaintiff's in-cell confinement with extremely tight restraints. *Id.* ¶¶ 23-27, 35.

Defendants maintain Plaintiff's grievance did not mention Nasiatka, Tittus, Amoral and Hollister or the deployment of a chemical agent. Defs.' Mem. at 8. They argue he has failed to exhaust his administrative remedies as to these defendants and the chemical deployment claim.

A plaintiff need not specifically articulate his claims in his grievances in the exact manner as his claim in federal court, but he must provide notice to the defendants about the factual basis of his claim. *Espinal v. Goord*, 558 F.3d 119, 127-28 (2d Cir. 2009). As the United States Supreme Court explained in *Woodford*:

> Because exhaustion requirements are designed to deal with parties
> who do not want to exhaust, administrative law creates an incentive

for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims.   Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).

548 U.S. at 90 (citation and internal quotation marks omitted) (emphasis in original).

Plaintiff's grievances did not name all of the defendants against whom he asserts his claims of Eighth Amendment excessive force.   The Supreme Court has clarified, however, that the PLRA does not impose a requirement for an inmate to name all defendants in the grievance.[4]   *See Bock*, 549 U.S. at 217.   Plaintiff's grievances provided ample notice to DOC that he brought a complaint of excessive force due to DOC correctional staff physically assaulting him and exposure to mace despite his asthmatic condition on June 30, 2019.   *See* Defs.' Ex. D at 3, 6.

Plaintiff's grievances show that DOC investigated the incident and should therefore have determined the DOC correctional staff members and the conduct involved during the incident on June 30, 2019.   The Court notes that Plaintiff's Level-2 Grievance stated that he had "severe asthma (respiratory problems)" and "voiced this matter several times . . . prior to being maced."   Defs.' Ex. D at 6.   He even states that Lieutenant Hollister maced him.   *See id.*

Plaintiff provided sufficient notice of his Eighth Amendment claim arising from Defendants' alleged physical assault on Plaintiff and the use of a chemical agent.   Accordingly, the Court concludes that Plaintiff has sufficiently exhausted

---

[4] Defendants cite to no requirement in Administrative Directive 9.6 requiring Plaintiff to name all Defendants.

16

his administrative remedies on his Eighth Amendment excessive force claim as to all relevant defendants.   The motion for summary judgment is denied on this ground of nonexhaustion for Plaintiff's Eighth Amendment excessive force claims.

b.    Fourteenth Amendment Due Process

Plaintiff alleges that District Administrator Mulligan and Lieutenant Betances ignored DOC policy by punishing him without providing him with the disciplinary report that charged him with assault on a DOC official.   Compl. ¶¶ 30-32, 38. Defendants assert that Plaintiff failed to properly exhaust his administrative remedies as he failed to file a Grievance under Administrative Directive 9.6(6).   *See* Defs.' Mem. at 7-8.

Defendants' evidence substantiates their Rule 56(a)1 statement that Plaintiff had access to his administrative remedies and the ability to file grievances (as demonstrated by his prior grievance filing) but failed to file any administrative remedies under Administrative Directive 9.6(6) relevant to his Fourteenth Amendment procedural due process claim against Mulligan and Betances.   Defs.' Stmt. ¶¶ 21, 22, 23.

An appeal of a disciplinary finding may constitute an exception to the exhaustion of administrative remedies rule.   *See Ramirez v. Allen*, No. 3:17-cv-01335 (MPS), 2018 WL 5281738, at *7 (D. Conn. Oct. 24, 2018) ("An appeal of a disciplinary action . . . is an exception to the standard administrative remedy procedures.") (citing Administrative Directive 9.6(4)(E)).[5]

_____

[5] Administrative Directive 9.6(4)(E) provides that "[a]n appeal of a guilty finding

17

Relevant to disciplinary appeals, Administrative Directive 9.6(10) provides:

A guilty finding received at a disciplinary hearing may be appealed by completing and depositing CN 9602, Inmate Administrative Remedy Form, in the Administrative Remedies box within 15 calendar days of the notice of decision.   Form CN 9602, Inmate Administrative Remedy Form shall be reviewed by the District Administrator of the district where the disciplinary report was adjudicated.   The District Administrator shall respond to any appeal within 15 business days of the receipt.   The District Administrator shall not delegate the authority to respond to any disciplinary appeal.   Disciplinary action resulting from a guilty plea shall not be subject to an appeal.

The District Administrator may alter disciplinary action in any way that best serves the correctional objectives of the State of Connecticut. The decision of the District Administrator shall not be subject to further appeal.

In their memorandum, Defendants reference Plaintiff's disciplinary appeal received on July 18, 2019 (and they cite to the copy of his disciplinary appeal submitted by Plaintiff in his response to Defendants' answer), complaining that he was found guilty on July 10, 2019 for "a Class A Disciplinary Report for (Assault on a DOC staff)," which was never delivered to him; he explains that he only received a disciplinary report for interfering with safety and security.   Defs.' Mem. at 19 (citing [Pl.'s Response to Answer at 15 (ECF No. 31)];[6]  see also [Pl.'s Response in Opp. Ex. at 30 (ECF No. 50)].   This appeal was denied by District Administrator

_____

received at a disciplinary hearing shall be in accordance with Section 10 of this Directive."   *See* Defs.' ex. B.

[6] Defendants cite and rely upon disciplinary appeal documents in arguing that Plaintiff received adequate notice of the charges against him to satisfy procedural due process.   *Id.* at 19.

Mulligan.   *See* Pl.'s Response to Answer at 10; Pl.'s Response in Opp. Ex. at 17.[7]

Plaintiff's grounds for his disciplinary appeal that he was found guilty of disciplinary charges for which he was not provided notice are essentially the same as his Fourteenth Amendment claim asserted in this action.   Accordingly, the Court concludes that Plaintiff's disciplinary appeal of his guilty finding sufficiently provided "a fair and full opportunity" for DOC to adjudicate the substance of his Fourteenth Amendment procedural due process claims in this action prior to the filing of this action.   *See Woodford*, 548 U.S. at 90.

As Defendants have not shown that Plaintiff failed to satisfy his PLRA exhaustion requirement for his procedural due process claim as a matter of law, the motion for summary judgment must be denied on this ground.

---

[7]  In his denial of Plaintiff's disciplinary appeal, Mulligan states:

> The Hearing Officer's finding was reasonable based on information and evidence presented at a formal hearing.   Documentation submitted to the presiding Hearing Officer substantiates that on June 30th, 2019, you struck Officer Purdy in the forehead twice while he attempted to control your combative behavior.   Additionally, I have reviewed your complaint of the Disciplinary Report having not been delivered to you in accordance with the policy outlined within Administrative Directive 9.5.   The facility properly researched and documented that Officer Day was not the officer who physically handed you the DR, rather Officer Venoutsos handed you the copy after signing into the station log book, the delivery can also be viewed on the facility surveillance footage.   My conclusion is that no serious due process failure occurred in the disposition of your disciplinary report.   I find no reason to modify the Hearing Officer's decision.

*Id.*

19

2.  **Administrative Directive 8.9**[8]

DOC Administrative Directive 8.9 governs the administrative remedies for health services.    Administrative Directive 8.9 (as relevant to this action) provides for two types of Health Services Review: (1) Diagnosis and treatment, which includes a decision not to provide treatment; and (2) Review of an Administrative Issue, which addresses concerns of "a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider."  A.D. 8.9(9).

Pursuant to Section 10 of Directive 8.9, both types of Health Services Reviews require an inmate to seek informal resolution of "the issue face to face with the appropriate staff member or with a supervisor via written request utilizing CN 9601 Inmate Request Form."  A.D. 8.9(10).   A response to the inmate shall be made within fifteen days of the written request.  *Id.*

An inmate who is dissatisfied with a diagnosis or treatment may apply for a Health Services Review "if the informal resolution via inmate request was unsuccessful."  A.D. 8.9 (11).   The inmate must check the Diagnosis/Treatment box on the form (CN 9602), explain concisely the cause of dissatisfaction, and deposit the form in the Health Services Remedies/Review box.  *Id.*   Upon receipt of CN 9602, the Health Services Review Coordinator shall schedule a Health Services Review Appointment with the appropriate health care provider.  A.D. 8.9

---

[8] **Defendants have submitted the relevant version of Administrative Directive 8.9 as exhibit G.**

(11)(A).   If the physician decides that the existing diagnosis or treatment is appropriate, the inmate shall have exhausted the Health Services Review.   A.D. 8.9 (11)(A).   The physician shall notify the inmate of the decision, in writing, within ten business days by indicating "No Further Action" in the disposition field.   *Id.*   "If the physician decides that a different diagnosis or treatment is warranted, he/she may either (1) act on his/her decision; or, (2) refer the case to the Utilization Review Committee for authorization by indicating 'Change of Treatment' or 'Referred to URC' as appropriate[.]"   A.D. 8.9 (11)(B).

An inmate may request review of an Administrative Issue by checking the box marked "All Other Health Care Issues" on the Health Services Review form (CN 9602); the inmate must provide a concise statement of what the inmate believes to be wrong and how the inmate has been affected, and the inmate must deposit the form in the Health Services box.   A.D. 8.9 (12).   This request for review shall be evaluated by a Health Services Review Coordinator within thirty days.   A.D. 8.9 (12)(A).   If the inmate is dissatisfied with the response, the inmate may appeal the decision within ten business days.   A.D. 8.9 (12)(B).   The appeal is decided and responded to by the designated facility health services director or designee within fifteen days.   A.D. 8.9 (12)(C).   For all issues relating to compliance with existing standards, this review is final, and the inmate shall have exhausted the requisite Health Services Review process.   *Id.*   If the matter "relates to a health service policy of the Department, the inmate may appeal to the DOC Director of Health Services" within ten business days from the receipt of the response.   A.D. 8.9

21

(12)(D).   The Director has thirty days to respond.   A.D. 8.9 (12)(E).   Upon receipt of this decision, the inmate shall have exhausted the Health Services Review for an Administrative Issue.   *Id.*

The Court permitted Plaintiff's medical indifference claims to proceed against RNs Jasenec and Butler for indifference to his medical needs.   IRO at 14. Plaintiff's claim of deliberate indifference to his medical needs as to RN Jasenec is based on alleged failure to properly examine Plaintiff after the assault, failure to treat him for his asthma or his injury, and failure to decontaminate his eyes. Compl. ¶¶ 28, 36.   His claim of deliberate indifference to his medical needs against RN Butler is based on Butler's inspection and approval of the extremely tight restraints despite his knowledge of the damage such restraints would cause. Compl. ¶¶ 29, 37.

Defendants provided declarations and grievance logs, which substantiate their Rule 56(a)1 statement that Plaintiff did not file any Health Services Reviews under Administrative Directive 8.9 between June 2019 through December 2019 (Plaintiff filed his complaint on November 28, 2019).   See *id.* at ¶ 33 (citing Kilham Decl. at ¶ 18, Ex. F; Medical Grievance Electronic Log, Ex. H).   As previously noted, Defendants' Rule 56(a)1 statement also states that Plaintiff had access to his administrative remedies and had the ability to file grievances as demonstrated by his prior grievance filing.   *See* Defs.' Stmt. at ¶¶ 23-24; *see Nickelson v. Annucci*, 2018 WL 7269856, at *8 (N.D.N.Y. Nov. 21, 2018) (holding that inmate was not unaware of the prison's grievance procedure because, in part, he has filed previous

grievances and appealed them).   Plaintiff's complaint states only that he "exhausted his administrative remedies," and he raises no suggestion that his administrative remedies were unavailable.   Compl. at ¶ 10; *see also* Pl.'s Response to Answer at ¶ 5 ("Plaintiff has exhausted all administrative remedies available.").[9]   Despite notice from Defendants (ECF No. 47-3), Plaintiff failed to file a Rule 56(a)2 statement in compliance with Local Rules 56(a)2 and (3) that refutes Defendants' Rule 56(a)1 assertions that he failed to exhaust his administrative remedies, that his administrative remedies were available to him, and that he had the ability to file his remedies.   Thus, the Court deems Defendants' 56(a)1 statements to be admitted as they are properly supported by the evidence.   S*ee Wu*, 2017 WL 923906, at *2 (deeming properly supported factual assertions as admitted where *pro se* Plaintiff failed to file a Rule 56(a)2 statement).   The motion for summary judgment will be granted on Plaintiff's claims against RNs Jasenec

---

[9] In his opposition response, Plaintiff represents that he filed his administrative remedies and that he was in restricted confinement where he had to rely on the DOC staff to pick up his grievances.   Response in Opp. ¶ 1.   He has submitted copies of Health Services Reviews addressing Jasenec's and Butler's conduct. Pl.'s Ex. at 23-26 (ECF No. 50-1).   Plaintiff does not, however, provide receipts to demonstrate that these Health Services Reviews were actually filed.   Because Plaintiff's statement that he has exhausted his administrative remedies is conclusory and his copies of Health Services Reviews invite speculation about whether he actually submitted these documents, Plaintiff has not raised a question of fact concerning his PLRA nonexhaustion requirement or the availability of his administrative remedies in light of Defendants' properly supported Rule 56(a)1 statements.   *See e.g., Simmons v. Sheckler*, 3:16-cv-01224 (JCH), 2018 WL 3596748, at *3 (D. Conn. July 26, 2018) (plaintiff "cannot rely exclusively on conclusory allegations or unsubstantiated speculation to defeat summary judgment, particularly in light of the defendant's Affidavits showing that [plaintiff] never filed a grievance.") (citations omitted).

and Butler because Defendants have demonstrated that Plaintiff failed to exhaust his administrative remedies that were available to him under Administrative Directive 8.9.

**B. Merits and Qualified Immunity**

Defendants argue that Plaintiff's Eighth and Fourteenth Amendment and state law claims all fail as a matter of law.    Defs.' Mem. at 17-20, 23-26. Defendants also maintain that Defendants should be afforded qualified immunity on the Plaintiff's Eighth and Fourteenth Amendment claims.    *Id.* at 27-31.

**1. Qualified Immunity**

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"    *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).    Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions."    *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)).    "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'"    *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or

24

constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations and citations omitted). The Court has discretion to determine the order in which it will address the inquiries required when assessing the applicability of qualified immunity. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson*, 555 U.S. at 236).

A right is clearly established if, "at the time of the challenged conduct ... every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

In addition, qualified immunity protects state actors when it was objectively reasonable for the state actor to believe that his conduct did not violate a clearly established right. *Manganiello v. City of New York,* 612 F.3d 149, 165 (2d Cir. 2010). "If a reasonable officer might not have known for certain that the conduct was unlawful – then the officer is immune from liability." *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1867 (2017). Therefore, the question this Court first asks is whether it was objectively reasonable for any of the defendants to believe their conduct was not unlawful at the time. *Simpson v. City of New York*, 793 F.3d 259, 268 (2d Cir. 2015).

2. Eighth Amendment

The Eighth Amendment protects against punishments that "involve the

unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). An inmate alleging excessive force in violation of the Eighth Amendment has the burden of establishing both an objective and subjective component to his claim. *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000); *see also Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court established the minimum standard to be applied in determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the Eighth Amendment in contexts other than prison disturbances. When an inmate claims that excessive force has been used against him or her by a prison official, he or she has the burden of establishing both an objective and subjective component to his claim. *See Romano*, 998 F.2d at 105.

To meet the objective component, the inmate must allege that the defendant's conduct was serious enough to have violated "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (internal quotation marks and citation omitted). A *de minimis* use of force will rarely be sufficient to satisfy the objective element unless that force is also "repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (quoting *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted)). However, it is the force used, not the injury sustained, that "ultimately counts." *Id.* at 37-38 ("core judicial inquiry" is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances). A malicious use of force constitutes a *per se* Eighth Amendment violation because "contemporary

standards of decency are always violated." *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citations omitted); *see also Hudson*, 503 U.S. at 9 ("[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" irrespective of whether significant injury is present).

The subjective component requires the inmate to show that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotations and citation omitted).

Defendants argue that they are entitled to entry of summary judgment because Defendants' use of force was justified and that they did not use force in a malicious or sadistic manner or use an unreasonable amount of force in response to Plaintiff's conduct. Defs.' Mem. at 23-25. Defendants' Rule 56(a)1 statement does not address the facts of Plaintiff's Eighth Amendment excessive force claim. *See* Defs.' Rule 56(a)1(ECF No. 47-2). Defendants did not file affidavits, video or other evidence indicating why they needed to use force, the relationship between that need and the amount of force they used, the threat they reasonably perceived, or any efforts they made to temper the severity of the force they used. Defendants

27

refer only to Mulligan's denial of Plaintiff's disciplinary appeal, which stated: "Documentation submitted to the presiding Hearing Officer substantiates that on June 30th, 2019, you struck Officer Purdy in the forehead twice while he attempted to control your combative behavior."   Pl.'s Response to Answer at 10; Pl.'s Response in Opp. Ex. at 17.   Plaintiff's verified complaint, however, provides allegations describing circumstances involving a harsh physical assault, exposure to a chemical agent, and placement in restraints.   *See* Compl. ¶¶ 18-27.

Defendant Mulligan's disciplinary disposition raises a question of fact about whether the Defendants reasonably applied force for legitimate penological grounds, but it fails to establish, as a matter of law, that Defendants' conduct did not violate contemporary standards of decency or that the force was applied for legitimate penological reasons.

In a case such as this, where the parties present conflicting or ambiguous versions of what happened, a genuine issue of fact is presented and a jury must decide whether the degree of force used by the prison officials was appropriate. *See Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 2017) ("Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.").

The Court denies the motion for summary judgment on Plaintiff's Eighth Amendment claims against Purdy, Nasiatka, Tittus, Amoral and Hollister on the merits.

The qualified immunity analysis also turns on the facts surrounding the need

for force and the nature and extent of force used by the Defendants. There are insufficient definitive facts on the record in this case for the Court to conduct that analysis.   As a result, the Court cannot find that it was objectively reasonable for Defendants to believe their conduct was not in violation of the Eighth Amendment at the time.   Accordingly, the Court denies Defendants' motion for summary judgment on the basis of qualified immunity.

### 3. Fourteenth Amendment Due Process

Plaintiff alleges that District Administrator Mulligan and Lieutenant Betances punished him without providing him with the disciplinary report charging him with staff assault.   Compl. ¶¶ 30-32, 38.   Defendants do not provide Rule 56(a)1 statements of fact addressing Plaintiff's Fourteenth Amendment procedural due process claim.   Defs.' Rule 56(a)1(ECF No. 47-2).   Nor do they submit any disciplinary report or evidentiary materials relevant to Plaintiff's disciplinary hearing.

The court must analyze a claim of violation of procedural due process by (1) asking whether there exists a liberty or property interest of which a person has been deprived, and (2) if so, whether the procedures followed by the State were constitutionally sufficient.   *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

In the prison context, a prisoner must show that he was subjected to an "atypical and significant hardship in relation to the ordinary incidents of prison life."   *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (prisoner subjected to a

disciplinary term of thirty days confinement in restrictive housing did not sustain a deprivation of a liberty interest for purposes of due process).   The court must examine the actual punishment received, as well as the conditions and duration of the punishment.   *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).   "The inquiry into the severity of confinement assesses whether differences in conditions between a restrictive housing status and the general population or other restrictive statuses constitute a significant hardship."   *Taylor v. Rodriguez*, 238 F.3d 188, 195 (2d Cir. 2001).

Defendants do not challenge Plaintiff's claim on grounds that he cannot establish a liberty interest.   Instead, they argue that Plaintiff cannot establish a Fourteenth Amendment due process violation.   Defs.' Mem. at 18.

In the context of prison discipline, an inmate is entitled to "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken."   *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (2d Cir. 2004)).   Relevant to this case, "'[d]ue process requires that prison officials give an accused inmate written notice of the charges against him twenty-four hours prior to conducting a disciplinary hearing[;]'" and the notice must permit a "reasonable person" to "understand what conduct is at issue so that he

30

may identify relevant evidence and present a defense." *Elder v. McCarthy*, 967 F.3d 113, 124 (2d Cir. 2020) (quoting *Sira*, 380 F.3d at 70).

Defendants argue that Plaintiff cannot establish he did not have notice of the charges; and even if he could, he cannot sustain his claim based on a harmless error. *See Allah v. Semple*, No. 3:18-cv-00887 (KAD), 2019 WL 6529821, at *8-9 (D. Conn. Dec. 4, 2019) (explaining that plaintiff must show that claim of due process error would have "helped his defense and affected the outcome of the hearing"); *Mohamed v. Phelix*, No. 9:14-CV-01389 (TJM/TWD), 2017 WL 4326660, at *11 (N.D.N.Y. June 13, 2017) (noting plaintiff "must show that he was prejudiced by the notice deficiency."); *Proctor v. Kelly*, No. 9:05-CV-0692 (GTS/GJD), 2008 WL 5243925, at *2 (N.D.N.Y. Dec. 16, 2008) ("The Second Circuit has specifically held that prison disciplinary hearings are subject to a harmless error analysis") (citing *Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir. 1991)); s*ee also Gibson v. Heary*, No. 17-CV-272S, 2021 WL 854736, at *10 (W.D.N.Y. Mar. 5, 2021) ("The Second Circuit has endorsed harmless-error review for inmate due process claims.").

Defendants tacitly acknowledge that Plaintiff was not served with a disciplinary report charging him with assault on DOC staff.  Defendants argue however, that Plaintiff made statements in his disciplinary appeal undisputedly admitting that he was aware of the charges and evidence against him "well in advance of his hearing."  Defs.' Mem. at 19.  Plaintiff's disciplinary appeal asserted that he was found guilty of assault on staff but that he had never received a copy of the disciplinary report charging him with this offense; referred to a

supplemental report by Correction Officer Day explaining how Day required assistance from another officer to deliver the disciplinary report; and explained that Plaintiff had received a different disciplinary report charging him with interference with safety and security.   Pl.'s Response to Answer at 15; Pl.'s Response in Opp. Ex. at 30.   In his appeal, Plaintiff asserted that "[t]he D.R. clearly states c/o Day as the delivering officer for the D.R. which I never received" and that Correction Officer Venoutsos committed fraud by documenting that he had delivered "Disciplinary Report(s) (Plural)" to Plaintiff.[10]   *Id.*   Plaintiff stated further that "the only thing I received was an interfering with safety or security & a R.H.O. Report as to why I was being placed in [a]dministrative detention."   *Id.*   These documents do not establish, as a matter of law, that Plaintiff had notice of the disciplinary charges for assault on DOC staff twenty-four hours in advance of the hearing so that he could understand what conduct was at issue in order to present his defense.   Plaintiff's disciplinary appeal reflects that Plaintiff only received notice of the interference with safety or security charge, which does not necessarily encompass conduct relating to assault on a DOC staff.

Defendants argue further that Plaintiff has not shown that he was prejudiced as a result of any lack of notice of the staff assault charges.   The present record provides almost no evidence concerning the hearing except for the copies of

---

[10]   Plaintiff has attached a Disciplinary Supplemental Report signed by Officer Day stating that he requested Officer Venoutsos to deliver the disciplinary report to Plaintiff.   *Id.* at 33.

Plaintiff's disciplinary appeal filings and Mulligan's denials thereof.   Pl.'s Response to Answer at 10-16; Pl.'s Response in Opp. Ex. at 3, 5, 17, 21-22, 27-30. Thus, the evidentiary record is not sufficient for the Court to determine, as a matter of law, that Plaintiff was not prejudiced by any failure to provide him notice within twenty-four hours of the hearing that would reasonably enable Plaintiff to understand the charges and present a defense in compliance with due process standards.   The Court must deny Defendants' motion for summary judgment on Defendants' arguments that Plaintiff's Fourteenth Amendment claims fail on the merits.

Defendants also argue that Plaintiff's Fourteenth Amendment claim against Mulligan fails for lack of personal involvement.   Defs.' Mem. at 12-17.   Defendants argue that as a District Administrator, Mulligan is a supervisory official and that since the Court issued its initial review of the Complaint, the Second Circuit clarified the standard to be applied to a claim of supervisory liability.   *Id.* at 14 (citing *Tangreti v. Bachman*, 983 F.3d 609 (2d Cir. 2020)).   Defendants argue *Tangreti* held that after *Iqbal*, "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"   *Id.* (quoting *Tangreti*, 983 F.3d at 618) (citation omitted).

The disciplinary appeal documents shows that Mulligan reviewed the hearing officer's guilty determination and concluded that Plaintiff had received sufficient notice and that no "due process failure occurred in the disposition of

33

[his] disciplinary report."   Pl.'s Response to Answer at 10; Pl.'s Response in Opp. Ex. at 17.   The disciplinary appeal also states that "[t]he facility properly researched and documented that Officer Day was not the officer who physically handed you the DR, rather Officer Venoutsos handed you the copy after signing into the station log book, the delivery can also be viewed on the facility surveillance footage."   [ECF No. 50-1 at 17].

The problem for Defendants is that, as already mentioned, there is no evidence in the record supporting Defendants' argument.   For example, the "DR" is not in evidence, nor are the relevant parts of the "station log book" Defendant Mulligan references in his appeal denial, nor is the video Defendant Mulligan relied on in denying Plaintiff's appeal.   As with Plaintiff's excessive force claim and his due process claim, the evidentiary record is not sufficient for the Court to determine, as a matter of law, that Defendant Mulligan was not personally involved in violating Plaintiff's constitutional rights.

Defendants argue that "[i]t is well settled that, for purposes of Section 1983, personal involvement cannot be established based on the receipt of a letter or grievance."   [ECF No. 47-1 at 15 (citing *Woods v. Goord,* No. 01 Civ. 3255(SAS), 2002 WL 731691, at *7 (S.D.N.Y. Apr. 23, 2002) (collecting cases))].   But here, Mulligan did much more than simply receive a letter or a grievance.   By his own statements, he reviewed the disciplinary reports at issue, reviewed the "station log book," and reviewed video purportedly showing Plaintiff was served with his disciplinary report charging him with assault on DOC staff, [ECF No. 50-1 at 17],

34

and then denied Plaintiff's appeal.   But none of that evidence is in the record, so the Court cannot say as a matter of law that Mulligan is not liable for improperly allowing Plaintiff to be punished without basis.   Therefore, the Court must deny Defendants' motion for summary judgment on Defendants' argument that Defendant Mulligan was not personally involved in Plaintiff's Fourteenth Amendment claim for due process violation.

### C.   Negligence

In his complaint, Plaintiff brings state law negligence claims against the defendants, although his complaint provides no specific counts asserting negligence.   Compl. ¶ 1.   The Court's initial review order permitted Plaintiff's negligence claims to proceed against Purdy, Nasiatka, Tittus, Amoral, Hollister, Jasenec and Butler in their individual capacities.   IRO at 14-15.   However, Plaintiff's negligence claims against these defendants in their individual capacities are barred by Connecticut General Statute § 4–165, which provides: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."   "[W]anton, reckless, or malicious" acts go beyond gross negligence, and denote "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."   *Martin v. Brady*, 261 Conn. 372, 379 (2002) (internal quotation marks and citation omitted).   Thus, Plaintiff cannot hold the defendants, who are state employees, "personally liable for their negligent actions performed within the

scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319 (2003).   The Court will grant the motion for summary judgment in Defendants' favor on the negligence claims.

### D.   Assault and Battery

Defendants argue that Plaintiff's assault and battery claims fail for the same reason as his Eighth Amendment claims.   Defs.' Mem. at 26.   In Connecticut, a correctional officer is statutorily authorized to use reasonable physical force in the performance of his duties.   *State v. Outlaw*, 179 Conn. App. 345 (2018); *see also State v. Salters*, 78 Conn. App. 1, 8 (2003) ("A correctional officer, therefore, is statutorily authorized to use reasonable physical force in the performance of his duties.").   Connecticut General Statutes. § 53a–18(a)(2) provides that "[a]n authorized official of a correctional institution or facility may, in order to maintain order and discipline, use such physical force as is reasonable and authorized by the rules and regulations of the Department of Correction."   However, whether the Defendants' application of force constitutes a reasonable use of force is a question of fact that cannot be resolved on the present record.   The motion for summary judgment will be denied on this ground.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS the motion for summary judgment, [ECF No. 47], as to Plaintiff's Eighth Amendment claims against RNs Jasenec and Butler, and on his claims of negligence; the Court DENIES the motion for summary judgment on Plaintiff's claims of Eighth Amendment excessive force,

on his Fourteenth Amendment procedural due process claims against Defendants Betances and Mulligan, and his state law claims of assault and battery.

The clerk is instructed to send this ruling to Jonathan Otero, Cimmaron Correctional Facility, 3200 S. Kings Highway, Cushing, OK 74023.

**IT IS SO ORDERED**

_____ */s/* _____
**Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: September 20, 2021**

37